IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN GOOD, | Case No. 1:09-cv-01791-JLT (PC) |
| Plaintiff, | ORDER GRANTING MOTION TO DISMISS |
| vs. | (Doc. 46) |
| CALIFORNIA DEPARTMENT OF CORRECTIONS, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Defendant's July 15, 2011 motion to dismiss that alleges that Plaintiff failed to exhaust administrative remedies. (Doc. 45) Plaintiff has filed an opposition to the motion. After careful consideration of the submitted papers and the entire record in this case, the Court **GRANTS** the motion to dismiss.

**I.   Background**

In this case, the Court has found cognizable two causes of action. (Doc. 32 at 5, 7) In one, Plaintiff alleges that Defendants Trayham and Kelly deprived him of regular showers. Id at 5. In the other, Plaintiff alleges that Defendants Trayham, Kelly and Remdez threatened him if he continued to file 602 inmate grievances. Id. at 7. In this regard, Plaintiff alleges that on April 23, 2009, Defendant Remdez "said if I 602 anything else there would be hell to pay. (Doc. 31 at 7) He alleges that "On May 12th [2009] I was called to program office. Sgt. Kelly threw my 602 Inmate grievance in a shredder and

told me not to file another one for Health and Safety conditions." Id. Finally, on May 20, 2009, Plaintiff alleges that, Defendant Trayham, either directly or indirectly, told Plaintiff "to drop my complaining about living conditions or suffer reprisals." Id. at 8. Plaintiff remained at CCI until June 6, 2009 when he was transferred to another state prison. Id.

Defendants assert that Plaintiff failed to file a grievance related to the two issues raised in his complaint. (Doc. 46) Defendants argue that Plaintiff filed only two appeals in 2008 and 2009 and both concerned his medical care and delays in receiving medication. Id. at 5. Along with their motion, Defendants provide the declaration of K. Sampson, the Litigation Coordinator for the California Correctional Institute, in Tehachapi, California, where Plaintiff is housed. (Doc. 46-1.) Sampson attests that CCI records all appeals filed by inmates and also maintains a database of all appeals that were screened out. Id. at 1. Sampson reports that Sampson conducted a search of these records and found that Plaintiff filed two appeals during 2008 and 2009. Id. at 2. Both of these appeals related to concerns over the medical care provided to Plaintiff and his complaints about not receiving his medications in a timely fashion. Id. Records attached to Sampson's declaration detail that Plaintiff filed three appeals on January 21, 2009, but because they were triplicates, two were screened out. (Doc. 46-3)

Sampson declares that from July 1, 2009 through July 1, 2009, CCI received 21 appeals that were received with 19 being assigned to a first level review and 3 to a second level review. (Doc. 46-1) Thirty-eight appeals were screened out. Id. All of these appeals originated from inmates housed with Plaintiff in Housing Unit 1, Level 3 yard. Id. at 3.

Defendants also provide the declaration of D. Foston, who is the Chief of the Office of Appeals for the CDCR. (Doc. 46-3.) Foston declares, that Foston conducted a thorough search of the appeal files maintained by the Office of Appeals. Id. at 2. Foston reports that the search yielded no third level appeal filed by Plaintiff from 2008 through September 2011, related to the issues raised in this litigation. Id.

Plaintiff argues that his appeal, detailed on Exhibit 2 to Defendants' motion as Log Number CCI-0-09-00100 and received on January 21, 2009, raised issues related to his complaints over being deprived of showers and other hygiene issues and his concerns over staff conduct. (Doc. 48) Plaintiff does not provide a copy of this grievances but has attached numerous documents to his First Amended

1  Complaint which detail the content of Plaintiff's 602 grievances. (Doc. 31 at 9-51)
2      On one sheet, Plaintiff details all of the grievances that he asserts he submitted but were not
3  logged by CCI. (Doc. 31 at 51)  The complaints relate to being forced to eat from makeshift tables made
4  from trash cans, the condition of the inmate's mattresses, the time limits placed on using the law library,
5  inadequate supplies and missing property after a cell search.  Id.  Only one grievance, filed on April 9,
6  2009, described as "Staff Misconduct" is arguably related to the issues of this lawsuit.  Id.  However,
7  review of the other documents filed by Plaintiff reveals that this complaint is not related to this litigation
8  but, instead, to claims that staff members were throwing away Plaintiff's grievances.  Id. at 10, 11, 12,18.
9      On April 16, 2009 and April 20, 2009, Plaintiff filed an "Inmate Request for Interview." (Doc.
10 31 at 10, 11, 12)  In each, respectively, Plaintiff listed his earlier grievances that he claimed that he filed
11 and set forth descriptions of each earlier grievance including "being fed off unsanitary trash cans as
12 makeshift tables," "health & safety violations" and "health & safety violations and mattresses that arent
13 [sic] all there or badly contaminated."  Id.  Plaintiff did not assert that any of the grievances complain
14 about a lack of regular showers or that he was threatened by a staff member.
15     On May 6, 2009, Plaintiff filed another "Inmate Request for Interview." (Doc. 31 at 13-14)  In
16 this request, Plaintiff decried the 602 process and outlined his previous grievances relating to "unsanitary
17 conditions," "Health & Safety violations and unsanitary partial mattress." Id. at 14. He reported that on
18 that same day, he was submitting a new 602 regarding "602 time limits/staff misconduct [regarding[ the
19 602 not getting logged."  Id.  Again, he did not claim that any of the grievances were about the lack of
20 regular showers or that he was threatened by a staff member.
21     On May 14, 2009, Plaintiff wrote a letter to the Appeals Coordinator, K. Sampson in which
22 Plaintiff further described what he believed was staff members throwing away his grievances.  (Doc. 31
23 at 49-50) In the letter, he reported to Sampson that he submitted two 602s on May 13, 2009; one which
24 complained about the failure to provide regular programs and yard time and the other which complained
25 about the quality of the inmate's mattresses.  Id. at 49.  In conclusion to the letter, Plaintiff emphasized
26 that he had to complain to outside agencies about the conditions at CCI which included complaints about
27 "being in a total lockdown inviorment, no shower, no yard, no programs, no church, I was being feed of
28 unsanitary trash cans used as plumber waste can/spit patoon/trash. I sleep on a partial mattress thats

1  lump/smells of urin & shit and it aint a whole mattress." Id. at 50.  Thus, this is the first report in which
2  Plaintiff mentions the issue of the irregular shower schedule but does not contend that he filed any 602
3  inmate grievances related thereto.
4       Though there is no evidence that Plaintiff complained about the lack of regular showers in any
5  602 submission, it is clear that he complained to others outside of CCI on this topic.  For example, on or
6  about April 26, 2009, Plaintiff wrote to the Office of Internal Affairs in which he complained about the
7  conditions at CCI and the failure of staff members to properly process 602s.  (Doc. 31 at 24-26).
8  Plaintiff reported that he filed four previous grievances on these topics; the first in December 2008, the
9  second in late December 2008, the third was on or around February 3, 2009 and the fourth was on March
10 18, 2009. Id. at 24. Plaintiff asserted that each of these grievances related to "unsanitary conditions
11 related to food health & safety violation comitted by staff" and for staff members throwing away his
12 602s. Id.
13     In the letter to IA, Plaintiff requested assistance with the conditions including being forced to eat
14 off makeshift tables made from trash cans, "numerous Health & Safety Issues" including being forced to
15 use unsanitary food trays, being permitted to shower only every 5 to 8 days, inadequate and unsanitary
16 mattresses and staff members "spraying pepr spray for complaining of mattresses that are not sleep-able
17 and the Sgt who picks up the 602 to log them but instead destroys the 602 if it deals with Health &
18 Safety violations." (Doc. 31 at 25)    Once again, though Plaintiff mentions the lack of regular showers
19 to IA, he does not assert that he submitted a 602 grievance related to this topic or that any staff member
20 threatened him about filing 602s.
21      Again, on April 29, 2009, the Office of the Omsbudsman responded to a complaint lodged with
22 that office by Plaintiff in which he complained that "food is being served in an unsanitary manner, . . .
23 the mattresses are unsanitary, . . . [Plaintiff had] medical concerns and . . . [Plaintiff was] unable to get to
24 the law library. (Doc. 31 at 9) Plaintiff does not mention a lack of showers or that any staff member
25 threatened him in an attempt to dissuade him from submitting 602s.
26      On May 27, 2009, the Inmate Appeals Branch responded to a complaint Plaintiff made to that
27 office. (Doc. 31 at 18)  In this letter, the IAB writes, "This is in response to your correspondence
28 received by the Inmate Appeals Branch (IAB) on May 7, 2009, stating that you have submitted numerous

appeals regarding unsanitary trashcans being used as make shift tables to serve food; mattresses are only 1/16th of a mattress or are rust covered, moldy, or smell of urine, showers every five to eight days on good days or ten to fifteen days apart on lock downs. You state that institution staff are throwing away your appeals." This is the only complaint to an outside agency in which he claims that he submitted a 602 related to lack of showers. Notably, again, he does not mention that any staff member threatened him as described in the complaint.

## III. EXHAUSTION REQUIREMENT

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prisoners are thus required to exhaust all available administrative remedies prior to filing suit. Jones v. Bock, 549 U.S. 199, 211 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). Exhaustion of administrative remedies is mandatory regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and applies to all prisoner suits relating to prison life. Porter v. Nussle, 534 U.S. 516, 532 (2002).

In order to properly exhaust administrative remedies, an inmate must comply with the prison's deadlines and other critical procedural rules. Woodford v. Ngo, 548 U.S. 81, 93 (2006). In California, the Department of Corrections and Rehabilitation has established an administrative grievance system for prisoner complaints. See Cal. Code. Regs, tit. 15 § 3084.1 (West 2009). Prisoners may appeal any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare. Id. at § 3084.1(a). The process is initiated by a prisoner submitting a CDCR Form 602, which is also known as an "inmate appeal." Id. at § 3084.2(a). The inmate appeal typically proceeds through four levels of review: an informal level, the first formal level, the second formal level, and the third formal level, also known as the "Director's Level." Id. at § 3084.5. A final decision from the Director's Level of review typically satisfies the exhaustion requirement under § 1997e(a). See, e.g., Barry v. Ratelle, 985 F. Supp. 1235, 1237-38 (S.D. Cal. 1997).

The exhaustion requirement is not jurisdictional, but rather creates an affirmative defense that a defendant may raise in a non-enumerated Rule 12(b) motion. Wyatt v. Terhune, 315 F.3d 1108, 1117-19

1  (9th Cir. 2003). The defendant bears the burden of raising and proving the absence of exhaustion. Id. at
2  1119. In deciding the motion, "the court may look beyond the pleadings and decide disputed issues of
3  fact." Id. If the court concludes that the prisoner has not exhausted all of his available administrative
4  remedies, "the proper remedy is dismissal of the claim without prejudice." Id. at 1120. If a complaint
5  contains exhausted and unexhausted claims, "the court proceeds with the good and leaves the bad."
6  Jones, 549 U.S. at 221.

## IV. DISCUSSION

### A. Exhaustion

The Court first determines whether Plaintiff submitted a grievance regarding the lack of regular showers at CCI and that staff members threatened him if he filed any 602 grievances. After a review of Plaintiff's records detailing his own 602 submissions, it appears Plaintiff did not submit a 602 grievance related either to the failure to receive regular showers or the threats by CCI staff. As noted above, Plaintiff submitted his own records with his First Amended Complaint that detail that none of his 602 grievances related to these issues. (Doc. 31 at 10, 11, 12, 31, 51) Instead, all concerned Plaintiff's protests about the cleanliness of the food trays, the use of trash cans as makeshift tables, the quality and condition of his mattress and library access. Id. at 51. Though it is clear that Plaintiff complained about the lack of showers outside of the 602 process to the Office of Internal Affairs and the Inmate Appeals Branch, the fact remains that even he admits that he did not grieve the failure to provide regular showers. Woodford, 126 S. Ct. at 2387 (The PLRA requires "proper exhaustion" of available administrative remedies.)

On the other hand, the issue related to staff threats made to dissuade him from submitting additional 602 grievances, is more troubling. However, despite the alleged threats made on April 23, 2009 and May 12, 2009, Plaintiff continued to regularly file 602 grievances after the threats but none mentioned that staff members had threatened him. (Doc. 31 at 51) There is no evidence that Plaintiff filed a grievance after the threats made on May 18, 2009 but Plaintiff does not allege that this was due to any threat. Id at 8. To the contrary, Plaintiff contends that the 602 grievance he submitted on January 11, 2009 including the two issues raised in this litigation. (Doc. 48 at 1) However, not only does this contention contradict his own documents (Doc. 31 at 10, 11, 12, 31, 51), it is inconsistent with

1  Defendant's evidence and it was filed before the alleged threats occurred.  (Doc. 31 at 7-8)  Accordingly,
2  the Court finds that Plaintiff has not exhausted a grievance regarding the lack of regular showers or the
3  threats by prison staff.

4        **B.**      **Exceptions to Exhaustion**

5       Because Plaintiff did not exhaust his administrative remedies, the Court must now determine
6  whether Plaintiff should be excused from the exhaustion requirement.  Plaintiff appears to argue that he
7  should be excused from his failure to exhaust administrative remedies because "Defendant threatened
8  [him], causing [him] to fear filing any grievance[s] . . . ."  (Doc. 42 at 1.)

9       The Ninth Circuit has held that an inmate may be excused from the exhaustion requirement if
10 circumstances rendered administrative remedies "effectively unavailable."  Sapp v. Kimbrell, 623 F.3d
11 813, 822 (9th Cir. 2010) (citing Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010)).  Although the
12 Ninth Circuit has never explicitly ruled on whether threats by prison officials may render administrative
13 remedies unavailable such that an inmate need not exhaust them, the Ninth Circuit has noted that other
14 circuits have.  See Sapp, 623 F.3d at 823.  For example, in Turner v. Burnside, 541 F.3d 1077 (11th Cir.
15 2008) the Eleventh Circuit acknowledged that a prison official's threat of retaliation against an inmate
16 for filing grievances could render administrative remedies unavailable where: (1) the threat actually did
17 deter the inmate from filing a grievance; and (2) the threat is one that would have deterred a reasonable
18 inmate of ordinary firmness from filing a grievance.  Id. at 1085.

19      Using the Eleventh Circuit's framework in Turner as guidance, the Court finds that Plaintiff's
20 administrative remedies were not rendered unavailable.  Considering Turner's second factor first, a
21 reasonable inmate of ordinary firmness would not have been deterred from filing a grievance under the
22 circumstances faced by Plaintiff.  Plaintiff alleges that he was threatened three times about submitting
23 addition 602 grievances.  However, despite this, Plaintiff regularly submitted 602 grievances but failed
24 to raise the issue related to denial of showers or staff threats. (Doc. 51)

25      Thus, it seems clear that Plaintiff was not cowed by any threat and freely exercised his right to
26 submit grievances.  Moreover, even if he was afraid to file any further grievances after the May 20, 2009
27 threat and while still housed at CCI, there is no explanation for his failure to file a grievance once he
28 arrived at his new housing at SATF on June 6, 2009.  (Doc. 31 at 8) In any event, as noted above,

1  Plaintiff *does not contend* that he failed to submit a grievance out of fear of retaliation. Instead, he
2  claims that his January 21, 2009, grievance covered these topics. (Doc. 48 at 1) As discussed above, the
3  Court disagrees.
4        This leads the Court back to Turner's first factor. The record clearly demonstrates that Plaintiff
5  was not actually deterred from lodging a grievance on the relevant topics. Thus, against this backdrop,
6  Plaintiff's bald assertion that the matter is not barred by his failure to exhaust his administrative
7  remedies as required by the PLRA, is not persuasive. Accordingly, the Court concludes that Defendant's
8  threats did not impede or preclude Plaintiff from filing a grievance and exhausting his administrative
9  remedies. Because administrative remedies were not rendered "unavailable," Plaintiff should not be
10 excused from his failure to exhaust and this action should be dismissed.

    **C.**    **Dismissal Without Prejudice**

As the Ninth Circuit has previously explained, "If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice." Wyatt, 315 F.3d at 1120.

**V.**    **CONCLUSION**

Accordingly, the Court **ORDERS**:

    1.    Defendant's July 15, 2011 motion to dismiss (Doc. 46) is **GRANTED**; and

    2.    This action is **DISMISSED WITHOUT PREJUDICE**.

IT IS SO ORDERED.

Dated:  **September 29, 2011**                      **/s/ Jennifer L. Thurston**
                                                            UNITED STATES MAGISTRATE JUDGE